## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF GEORGIA
## STATESBORO DIVISION

CLARISSA GILMORE,

        Plaintiff,

   v.

ALBERTA W. MILTON, et al.,

        Defendants.

CIVIL ACTION NO.: 6:18-cv-115

## O R D E R

Presently before the Court is a Partial Motion to Dismiss, (doc. 27), filed by Defendants Alberta W. Milton, Sabrini Carlene Lupo, Christina M. Irizarry, and Tarmarshe A. Smith (hereinafter the "Defendants").  Plaintiff Clarissa Gilmore initiated this action on November 20, 2018, (doc. 1), and filed an Amended Complaint on May 29, 2019, (doc. 25).[1]  Plaintiff alleges that Defendants violated Georgia law and her state and federal constitutional rights pursuant to 42 U.S.C. § 1983 by effectuating an unlawful strip search of her person while she was a visitor at Smith State Prison on February 26, 2017.  (Id. at p. 4.)  Plaintiff also asserts several other federal and state claims based on the same incident.  Defendants filed the at-issue Motion on June 19,

---

[1]  In her Complaint, Plaintiff also named as Defendants the Georgia Department of Corrections ("GDC") and Douglas M. Williams.  (Doc. 1.) In her Amended Complaint, however, she fails to name or assert claims against GDC.  (See doc. 25.) Under black letter federal law, "an amended complaint supersedes the initial complaint and becomes the operative pleading in the case." Lowery v. Ala. Power Co., 483 F.3d 1184, 1219 (11th Cir. 2007). Thus, GDC is not a party to this action. See Pretty Punch Shoppetes, Inc. v. Creative Wonders, Inc., 750 F. Supp. 487, 493 (M.D. Fla. 1990) ("Under [Federal] Rule [of Civil Procedure] 15, . . . parties may be added or dropped when an amendment is made to a complaint as a matter of course."). As to Defendant Williams, Plaintiff does assert claims against him in both pleadings.  (See docs. 1, 25.) However, there is no indication that Plaintiff has served Defendant Williams as required by Federal Rule of Civil Procedure 4.  Accordingly, as discussed in Section IV, infra, Defendant Williams is not yet a proper party to this action, and the Court omits Defendant Williams from its discussion of Plaintiff's claims.

2019, seeking to dismiss all claims, except Plaintiff's Fourth Amendment unreasonable search and seizure claim and her punitive damages claim. Plaintiff filed a Response in opposition, (doc. 28), and Defendants filed a Reply, (doc. 31). For the reasons set forth below, the Court **GRANTS** Defendants' Motion. (Doc. 27.)

## BACKGROUND

According to her Amended Complaint, on February 26, 2017, Plaintiff visited an inmate at Smith State Prison ("SSP"). (Doc. 25, p. 4.) Plaintiff and the inmate met in a visitation room that Defendant Lupo, an SSP Peace Officer, was monitoring. (Id. at pp. 3, 5.) At some point during the visit, Defendant Lupo informed Defendant Milton, an SSP Lieutenant, that Plaintiff possessed contraband. (Id. at pp. 2–3, 5.) Consequently, according to the Amended Complaint, Defendant Smith, the Deputy Warden at SSP, and/or Defendant Williams, the Warden at SSP at the time, ordered that Plaintiff be searched.[2] (Id. at p. 5.) After Plaintiff denied having contraband on her person, Defendant Milton told her, "If you don't consent [to a search], we will take you to jail." (Id.) Plaintiff was also informed that if Defendants arrested her, she would be searched regardless of her consent. (Id.) Based on these statements, Plaintiff agreed to the search. (Id. at p. 6.) Defendant Irizarry, an SSP Corrections Officer, then "strip searched" Plaintiff with the "assistance" of Defendant Milton. (Id. at pp. 3, 6.) Plaintiff alleges that she was "stripped completely naked and placed in a compromising and humiliating position, [and that her] anus and vagina were also inspected for contraband." (Id. at p. 6.)

Plaintiff filed this lawsuit seeking to recover damages from Defendants for the allegedly wrongful search. In Count I of her Amended Complaint—which is entitled "Violation of 42 U.S.C.

---

[2] According to the Amended Complaint, pursuant to the Standard Operating Procedures for the GDC, strip searches must be "documented by a strip search approval form," which requires at least two signatures: that of the "approval official" and that of the "officer-in-charge," and strip searches can only be approved by the Warden, the Deputy Warden of Security, or the Administrative Duty Officer. (Doc. 25, p. 4.)

§ 1983" and is asserted against all Defendants—she alleges that she was deprived of "the constitutionally guaranteed right of due process pursuant to the Fourth Amendment and the right to be protected against unreasonable searches and seizures," that Defendants "acted in bad faith and [with] malicious purpose in a manner exhibiting wantonness and willful disregard for [her] constitutional rights," and that "Defendants' persistent procedures and practices caused the violations of [her] federal and state constitutional rights by using unreasonable, excessive intimidation, and psychologically damaging tactics in order to illegally detain and search [her]." (Id. at pp. 7–8.)  In Count II—which is entitled "Unreasonable Search and Seizure Under the United States Constitution" and is asserted against all Defendants—Plaintiff claims that Defendants lacked "reasonable articulable suspicion [and] probable cause to search or detain [her];" that "[e]ach Defendant acted in the chain of the command that lead [sic] to" the illegal search; and that Defendants Lupo and Smith "failed to take any action, let alone reasonable steps, to protect [her] from the unlawful conduct of the other officers present."  (Id. at pp. 8–11.)  She alleges that these actions were unreasonable under the Fourth and Fourteenth Amendments.  (Id.) In the remaining Counts, Plaintiff asserts state law claims against Defendants Milton and Irizarry for false imprisonment and battery (Counts III and IV); a state law claim against Defendant Smith for breaching her duty to "properly train and supervise" Defendants Milton, Irizarry, and Lupo (Count V); and a claim against all Defendants for intentional infliction of emotional distress (Count VI).[3]  (Id. at pp. 11–14; see doc. 28, p. 2.)  Finally, Plaintiff seeks punitive damages (Count VII) and expenses of litigation pursuant to 42 U.S.C. § 1988.  (Doc. 25, p. 15.)

---

[3] Plaintiff does not specify the legal basis for her intentional infliction of emotional distress claim.  (See doc. 25, pp. 14–15.)  The Court is aware of no legal support for a Section 1983 intentional infliction of emotional distress cause of action; accordingly, the Court will presume Plaintiff intended to rely only on state law to assert this claim.  See, e.g., Lloyd v. Jones, No. 9:18-CV-211, 2019 WL 4786874, at *17 (E.D. Tex. Sept. 10, 2019), report and recommendation adopted sub nom, Hopson-Lloyd v. Jones, No. 9:18-CV-211, 2019 WL 4747850, at *1 (E.D. Tex. Sept. 27, 2019) ("The Court's research yielded no legal support

In their Motion, Defendants explicitly state that they are not moving to dismiss "Plaintiff's Fourth Amendment claims against Defendants for their purported personal participation in her strip search" or her claim for punitive damages.  (Doc. 27, pp. 1–2.)  They do, however, seek the dismissal of all other claims against them.  (Id.)

## STANDARD OF REVIEW

When evaluating a Rule 12(b)(6) motion to dismiss, a court must "accept[] the allegations in the complaint as true and constru[e] them in the light most favorable to the plaintiff."  Belanger v. Salvation Army, 556 F.3d 1153, 1155 (11th Cir. 2009).  However, this tenet "is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  Rather, "[a] complaint must state a facially plausible claim for relief, and '[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'"  Reese v. Ellis, Painter, Ratterree & Adams, LLP, 678 F.3d 1211, 1215 (11th Cir. 2012) (quoting Iqbal, 556 U.S. at 678).  "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" does not suffice.  Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

The plausibility standard is "not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief" and dismissal is proper.  Id. (internal quotation marks and citation omitted).  Dismissal under Rule 12(b)(6) is also permitted "when, on the basis of a

---

for a Section 1983 intentional infliction of emotional distress cause of action relative to the one plead by Plaintiff here.  Construing her complaint in the most favorable light, the Court will look to Texas law on [intentional infliction of emotional distress] claims.").

dispositive issue of law, no construction of the factual allegations will support the cause of action."
Marshall Cnty. Bd. of Educ. v. Marshall Cnty. Gas Dist., 992 F.2d 1171, 1174 (11th Cir. 1993);
see also Neitzke v. Williams, 490 U.S. 319, 326–27 (1989) (explaining that Rule 12 allows a court
"to dismiss a claim on the basis of a dispositive issue of law").

**DISCUSSION**

## I.    State Law Claims (Counts III–VI)

In her Amended Complaint, Plaintiff asserts several claims pursuant to Georgia law.[4]
(Doc. 25, pp. 11–14.)  Specifically, Plaintiff brings claims for false imprisonment and battery
against Defendants Milton and Irizarry (Counts III and IV); negligent supervision and training
against Defendant Smith (Count V); and intentional infliction of emotional distress against all
Defendants (Count VI).  Defendants argue that the Court should dismiss these claims because the
GDC—Defendants' state agency employer—"is the proper party defendant with respect to
Plaintiff's state law claims" and, under Georgia law, "the GDC is immune from suit in federal
court."  (Doc. 31, p. 6.)

Under the Eleventh Amendment, states and arms of the state are immune from suit in
federal court without their consent. See Ga. Ports Auth. v. Lawyer, 821 S.E.2d 22, 28 (Ga. 2018).
"[A]bsent a waiver of Eleventh Amendment immunity by the state or a valid abrogation by
Congress, the Court lacks subject-matter jurisdiction to entertain [such a] claim . . . ." McCall v.
Dep't of Human Res., 176 F. Supp. 2d 1355, 1361 (M.D. Ga. 2001).  The Georgia Constitution
likewise extends sovereign immunity to the state's departments and agencies and explicitly

---

[4]  The Court exercises its supplemental (or pendent) jurisdiction over Plaintiff's state law claims, because
she has set forth plausible federal claims (for unreasonable search and seizure) against all Defendants, which
Defendants have not sought to have dismissed.  28 U.S.C. § 1367(c); L.A. Draper & Son v. Wheelabrator-
Frye, Inc., 735 F.2d 414, 427 (11th Cir. 1984) (court can exercise pendent jurisdiction over state law claims
not otherwise cognizable in federal court where the court has jurisdiction over a substantial federal claim
and the federal and state claims derive from a common nucleus of operative fact).

provides that this immunity can only be waived by an act of legislation.  Ga. Const. art. I, § II, para. IX(e).  The Georgia Constitution allows the Georgia General Assembly to waive the state's sovereign immunity by enacting a State Tort Claims Act.  Ga. Const. art. I, § II, para. IX(a).  Pursuant to that power, the General Assembly enacted the Georgia Tort Claims Act ("GTCA"), O.C.G.A. §§ 50-21-20 to -37, which provides a limited waiver of "sovereign immunity for the torts of state officers and employees while acting within the scope of their official duties or employment." O.C.G.A. § 50-21-23(a).  While the GTCA provides "the exclusive remedy for any tort committed by a state officer or employee," O.C.G.A. § 50-21-25(a), the GTCA "prohibits lawsuits directly against the state officer or employee for such torts."  Hartley v. Agnes Scott Coll., 759 S.E.2d 857, 861 (Ga. 2014) (citing O.C.G.A. § 50-21-25(a), (b)).  Should a plaintiff wish to hold a party accountable for tortious conduct, "the plaintiff must name the government entity for which the state official was acting and shall not name the state official individually."  McCall, 176 F. Supp. 2d at 1362 (citing O.C.G.A. § 50-21-25(b)).

In her Amended Complaint, Plaintiff purports to assert claims against Defendants only in their individual capacities, (see doc. 25, pp. 2–4), but her claims only concern acts committed by them as employees of the GDC, a state government entity.[5]  (See doc. 25.)  She does not allege that any Defendant undertook any act beyond the scope of his or her employment with the GDC. While sovereign immunity "does not protect state employees sued in their individual capacity for employment-related acts," Jackson v. Ga. Dep't of Transp., 16 F.3d 1573, 1575 (11th Cir. 1994), the GTCA provides that "[a] state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor," O.C.G.A. § 50-21-25(a).  This state law exemption from individual liability for state officers and

---

[5]  The GTCA defines a "[s]tate officer or employee" as "an officer or employee of the state . . . and persons acting on behalf or in service of the state in any official capacity . . . ."  O.C.G.A. § 50-21-22(7).

employees has been construed broadly.  See Romano v. Ga. Dep't of Corr., 693 S.E.2d 521, 525 (Ga. Ct. App. 2010) (dismissing state law conversion claims against correction officers); Davis v. Standifer, 621 S.E.2d 852, 855 (Ga. Ct. App. 2005) (dismissing claim alleging officer sexually assaulted a woman during a traffic stop).  Additionally, "[s]ince there is no exemption in [O.C.G.A.] § 50-21-25 for acts motivated by malice or intent to injure, the presence of such motivation has no effect on the immunity granted by this statute."  Ridley v. Johns, 552 S.E.2d 853, 854 (Ga. 2001).  "Where the state employee acts in the prosecution and within the scope of his official duties, intentional wrongful conduct comes within and remains within the scope of employment."  Romano, 693 S.E.2d at 525 (quoting Ford v. Caffrey, 666 S.E.2d 623, 626 (Ga. Ct. App. 2008)); see also Minor v. Barwick, 590 S.E.2d 754, 762–63 (Ga. Ct. App. 2003) (official immunity under O.C.G.A. § 50-21-25(a) applies even when a state correctional officer acted with malice and intent to injure).

Thus, while Plaintiff does allege some Defendants harbored malice and intent to harm in connection with some of her state law claims, (see doc. 25, pp. 12–13), because she does not actually allege that any of the Defendants acted outside the scope of their official duties, she cannot hold them liable under state law in their individual capacities.  Accordingly, the GDC is the proper "party defendant" for the state law claims.  O.C.G.A. § 50-21-25(b).

The GTCA provides that where state officers or employees have been improperly named as individuals, the state government entity must be substituted as the party defendant.  Id. However, such a substitution would be futile in this case.  While the GTCA provides a limited waiver of the state's sovereign immunity for actions alleging torts committed by state officers or employees, it also expressly provides that "[t]he state does not waive any immunity with respect to actions brought in the courts of the United States."  O.C.G.A. § 50-21-23(b).  Accordingly,

Plaintiff's state law tort claims fail in this Court as a matter of law. See Presnell v. Paulding Cnty., 454 F. App'x 763, 766 (11th Cir. 2011) ("[T]he GTCA does not waive Georgia's immunity from suit in federal courts.").

Moreover, even if the GDC were subject to suit in federal court, Plaintiff's claims are barred because they fall within the purview of another statutorily enumerated exception to the state's waiver of sovereign immunity. See O.C.G.A. § 50-21-23(a); O.C.G.A. § 50-21-24 (providing thirteen categories of exceptions). Pursuant to the "assault and battery" exception, the state retains immunity "for losses resulting from" assault, battery, or false imprisonment. O.C.G.A. § 50-21-24(7). The assault and battery exception "is not limited in application to acts taken by a State officer or employee but covers all losses resulting from the torts enumerated therein." Youngblood v. Gwinnett Rockdale Newton Cmty. Serv. Bd., 545 S.E.2d 875, 878 (Ga. 2001). Therefore, in determining whether the assault and battery exception applies, "the focus is not on the government action taken or the duty allegedly breached by the government, but on the act causing the underlying loss." Chin Pak v. Ga. Dep't of Behavioral Health & Developmental Disabilities, 731 S.E.2d 384, 385 (Ga. Ct. App. 2012) (quoting Ardizonne v. Dep't of Human Res., 575 S.E.2d 738, 739 (Ga. Ct. App. 2002)). "Any alleged losses arising out of conduct that would constitute the common law tort of assault or battery upon the plaintiff's person fall within the exception, irrespective of what particular state law causes of action the plaintiff brings in order to recover for those losses . . . ." Davis, 621 S.E.2d at 857.

Here, Plaintiff's false imprisonment, battery, negligent supervision and training, and intentional infliction of emotional distress claims allege injury from an unwarranted and invasive strip search of her person—conduct that, if true, plainly constitutes battery.[6]  (See doc. 25.)

---

[6] Additionally, false imprisonment claims, like battery claims, are explicitly barred pursuant to O.C.G.A. § 50-21-24(7).

Accordingly, the exception in O.C.G.A. § 50-21-24(7) necessarily applies, and Plaintiff's state law claims are due to be dismissed.  See, e.g., Davis, 621 S.E.2d at 857 (exception bars claims for "mental and emotional anguish and harm" and negligent supervision where a police officer allegedly sexually assaulted the plaintiff during a traffic stop); Collier v. Whitworth, 423 S.E.2d 440, 441 (Ga. Ct. App. 1992) (exception bars false imprisonment claim).

Even accepting as true that Defendants committed the acts as alleged in Plaintiff's Amended Complaint, Defendants cannot be held liable under state law.  While this may seem unjust,

> [s]overeign immunity is a harsh doctrine, not an equitable one.  Indeed, it is just the opposite of equity—it is the state declaring that it cannot be sued even where it would otherwise be liable.  Nevertheless, it is a constitutionally recognized doctrine, and the constitution expressly provides that immunity for tort claims can be waived only by a legislative act specifically providing for such waiver and setting forth the extent thereof.

Chin Pak, 731 S.E.2d at 386–87 (quotation and citation omitted).  Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss as to Plaintiff's state law claims, which are alleged as Counts III through VI.

## II.     Violations of Georgia's State Constitution

In Count I of the Amended Complaint, which is entitled "Violation of 42 U.S.C. § 1983," Plaintiff alleges, *inter alia*, that "Defendants' persistent procedures and practices caused the violation[] of Plaintiff's . . . state constitutional rights."  (Doc. 25, p. 7.)  According to Plaintiff, Defendants "us[ed] unreasonable, excessive intimidation, and psychologically damaging tactics in order to illegally detain and search [her]" and "Defendants' actions deprived [her] of her rights secured under the Constitution of . . . the State of Georgia."  (Id. at pp. 7–8.)

In their Motion, Defendants construe Plaintiff's state constitutional claim as a due process claim under the Due Process Clause of the Georgia Constitution.  (Doc. 27-1, pp. 4–5.)  Defendants

assert that the claim should be dismissed because it is not cognizable. (Id. at p. 5.) In her Response, Plaintiff contends this argument is moot because she is "not seeking redress under the due process clause of the Georgia Constitution." (Doc. 28, p. 5.) Notably, however, she neglects to ever specify the basis upon which she *does* "seek[] redress under the Georgia Constitution." (Id.; see also doc. 25.) By renouncing any claim under the Due Process Clause of the Georgia Constitution and declining to specify the particular state constitutional right that she claims Defendants violated, Plaintiff has failed to show a plausible basis for affording her relief under the Constitution of the State of Georgia. See, e.g., Noel v. Ledbetter, 734 F. App'x 715, 717–18 (11th Cir. 2018) ("Noel also failed to state a claim that his constitutional rights were violated . . . because Noel failed to 'identify [any] specific constitutional right [Defendants] allegedly infringed.'") (citing Albright v. Oliver, 510 U.S. 266, 271 (1994)).

Additionally, Plaintiff explicitly and repeatedly asserts that Count I is a claim for "violation of 42 U.S.C. § 1983." (See doc. 25, p. 7.) Claims brought under Section 1983, however, may only seek relief for violations of *federal* constitutional or statutory rights—not violations of state rights. See Knight v. Jacobson, 300 F.3d 1272, 1276 (11th Cir. 2002); Lovins v. Lee, 53 F.3d 1208, 1210–11 (11th Cir. 1995). Accordingly, even if Plaintiff had specified a right under the Georgia Constitution that she claims was violated, her Section 1983 claim for violation of that right would nonetheless be subject to dismissal.[7]

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's claim that they violated her rights under the Georgia Constitution.

---

[7] Plaintiff does not allege that Defendants violated her state constitutional rights in any other counts of the Amended Complaint.

### III.    Federal Claims

Defendants move for dismissal of Plaintiff's Fourth Amendment failure to intervene claim, Fourteenth Amendment unreasonable search and seizure claim, and Fourth Amendment due process claim.  (Doc. 27-1, pp. 4–11.)  The Court will address each in turn.

#### A.    Section 1983: Fourth Amendment Failure to Intervene Claim

In Count II, Plaintiff asserts that Defendants Lupo and Smith "failed to take any action, let alone reasonable steps, to protect Plaintiff from the unlawful conduct of the other officers present." (Doc. 25, p. 11.)  In their Motion, Defendants Lupo and Smith assert that qualified immunity shields them from this failure to intervene claim because "it was not clearly established on February 26, 2017, that such a cause of action existed . . . ."  (Doc. 27-1, pp. 10–11.)  Specifically, these Defendants assert that "it is not clear that a Fourth Amendment cause of action exists for failure to intervene in a purportedly unconstitutional search . . . where there is no allegation of excessive force."[8]  (Id. at p. 10.)

In response, Plaintiff contends that qualified immunity does not apply because: (1) district courts within the Eleventh Circuit "have permitted [S]ection 1983 claims to survive summary judgment on a theory of failure to intervene in an unlawful strip search," and (2) "[i]t is well established that Defendants needed reasonable suspicion to strip search [Plaintiff]."  (Doc. 28, pp. 11, 13.)

#### (1)    Qualified Immunity Standard

"Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates 'clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Dalrymple v. Reno,

---

[8]  Defendants accurately note that Plaintiff has not alleged that she was subjected to excessive force during the search.  (Doc. 27-1, p. 8; see doc. 25.)

334 F.3d 991, 994 (11th Cir. 2003) (quoting <u>Hope v. Pelzer</u>, 536 U.S. 730, 739 (2002)).   The doctrine is "intended to 'allow government officials to carry out their discretionary duties without the fear of personal liability or harassing litigation, protecting from suit all but the plainly incompetent or one who is knowingly violating the federal law.'"  <u>Hoyt v. Cooks</u>, 672 F.3d 972, 977 (11th Cir. 2012) (quoting <u>Lee v. Ferraro</u>, 284 F.3d 1188, 1194 (11th Cir. 2002)).  As a result, qualified immunity "liberates government agents from the need to constantly err on the side of caution by protecting them both from liability 'and the other burdens of litigation, including discovery.'"  <u>Holmes v. Kucynda</u>, 321 F.3d 1069, 1077 (11th Cir. 2003) (quoting <u>Lambert v. Fulton Cnty.</u>, 253 F.3d 588, 596 (11th Cir. 2001)).  But qualified immunity does not protect an official who "knew or reasonably should have known that the action he took within his sphere of official responsibility would violate the constitutional rights of the plaintiff."  <u>Id.</u> (quoting <u>Harlow v. Fitzgerald</u>, 457 U.S. 800, 815 (1982)).

### (2)   Discretionary Function

To rely upon qualified immunity, a defendant first must show that he or she acted within his or her discretionary authority.  <u>Mobley v. Palm Beach Cnty. Sheriff Dep't</u>, 783 F.3d 1347, 1352 (11th Cir. 2015).  Specifically, a defendant must show that he "was (a) performing a legitimate job-related function (that is, pursuing a job-related goal), (b) through means that were within his power to utilize."  <u>Holloman ex rel. Holloman v. Harland</u>, 370 F.3d 1252, 1265 (11th Cir. 2004).

The allegations in Plaintiff's Amended Complaint indicate that, at all relevant times on February 26, 2017, Defendants Lupo and Smith were acting within their authorities as a peace officer and as a deputy warden, respectively, at SSP.  (<u>See</u> doc. 25, p. 5 (alleging that Defendant Lupo, who was monitoring the visitation room, advised another officer that he believed that

Plaintiff possessed contraband); id. (alleging that Defendant Smith ordered that Plaintiff be searched).)  In her briefing, Plaintiff does not attempt to argue that either of these Defendants were acting beyond the scope of their discretionary authority.  Therefore, Defendants Lupo and Smith may properly assert the defense of qualified immunity, and the burden now shifts to Plaintiff to show that qualified immunity is not appropriate.  Lee, 284 F.3d at 1194.

### (3)    Clearly Established Right

The Court must grant qualified immunity unless the facts taken in the light most favorable to Plaintiff show: (1) that there was a violation of the Constitution, and (2) that the illegality of the Defendants' actions was clearly established at the time of the incident.  Hoyt, 672 F.3d at 977. The Court has discretion in deciding which of those two prongs to address first.  Pearson v. Callahan, 555 U.S. 223, 236 (2009); see also Morris v. Lexington, 748 F.3d 1316, 1322 (11th Cir. 2014) ("A qualified-immunity inquiry can begin with either prong; neither is antecedent to the other.").  This flexibility allows the Court to determine, in certain cases, that it can "rather quickly and easily decide that there was no violation of clearly established law before turning to the more difficult question [of] whether the relevant facts make out a constitutional [violation] at all." Pearson, 555 U.S. at 239; see also Militello v. Sheriff of the Broward Sheriff's Office, 684 F. App'x 809, 812 (11th Cir. 2017) (per curiam) ("It is axiomatic that we have the sound discretion to determine which prong of qualified immunity should be analyzed first.").  In cases where multiple defendants assert the defense of qualified immunity, the Court must assess qualified immunity "as it relates to [each defendant's] actions and omissions."  Alcocer v. Mills, 906 F.3d 944, 951 (11th Cir. 2018); see also Norris v. Williams, 776 F. App'x 619, 622 (11th Cir. 2019) (per curiam) (district court improperly "assumed that each [d]efendant participated in each alleged action" and did not consider individual actions).  Because it cannot be said that the illegality of

Defendant Lupo's failure to intervene and Defendant Smith's failure to intervene was clearly established on February 26, 2017, the Court declines to decide whether there was a constitutional violation.

The violation of a constitutional right is clearly established if a reasonable official would understand that his conduct violates that right. See Coffin v. Brandau, 642 F.3d 999, 1013 (11th Cir. 2011) (en banc). This showing can be made in one of three ways. First, the plaintiff may point to a "materially similar case [that] has already been decided" by the Supreme Court of the United States, the Eleventh Circuit Court of Appeals, or the highest court of the pertinent state, affirming the existence of the right and thereby providing fair notice that the at-issue conduct would constitute a violation of the at-issue right. Loftus v. Clark-Moore, 690 F.3d 1200, 1204 (11th Cir. 2012). Second, a broad statement of principle from "a federal constitutional or statutory provision or earlier case law" can provide notice that certain conduct amounts to a constitutional violation where the principle "applie[s] with 'obvious clarity' to the circumstances, establishing clearly the unlawfulness of Defendants' conduct." Long v. Slaton, 508 F.3d 576, 584 (11th Cir. 2007). Finally, a plaintiff may show that the alleged conduct of the officials was "so egregious that a constitutional right was clearly violated, even in the total absence of case law." Lewis v. City of West Palm Beach, 561 F.3d 1288, 1292 (11th Cir. 2009).

Plaintiff first contends that the illegality of the failure to intervene in an unlawful strip search was clearly established by two district court decisions within the Eleventh Circuit: Sampson v. Reed, No. 1:12-cv-500-TWT, 2013 WL 1320508 (N.D. Ga. Mar. 28, 2013), and Sims ex rel. Sims v. Forehand, 112 F. Supp. 2d 1260 (M.D. Ala. 2000). (Doc. 28, pp. 11–12.) Even assuming Sampson and Sims stand for the proposition that an officer can be held liable for failing to intervene in preventing an unlawful strip search where no excessive force is present, neither

decision came from the United States Supreme Court, the Eleventh Circuit Court of Appeals, or the Georgia Supreme Court.  Indeed, Plaintiff has not cited to—and the Court has not found—a case decided by the United States Supreme Court, the Eleventh Circuit, or the Georgia Supreme Court that establishes that an officer has a duty to intervene in an allegedly unlawful strip search where no excessive force is present.  See Tarantino v. Citrus Cnty., No. 5:12-cv-434-Oc-32PRL, 2014 WL 4385550, at *14 (M.D. Fla. Sept. 4, 2014) ("[A]t best it appears the law is undecided as to whether a failure to intervene claim is available where excessive force is not involved . . . .").

While the Eleventh Circuit has held that an officer can be personally liable for failing to intervene in excessive force cases, the Eleventh Circuit has not expanded such liability to cases lacking an element of excessive force.  See, e.g., Jones v. Cannon, 174 F.3d 1271, 1286 (11th Cir. 1999) (noting that while an officer can be held liable for failing to intervene in excessive force cases, the absence of authority from the Supreme Court or Eleventh Circuit dealing outside the realm of excessive force supported granting qualified immunity).  "The fact that district courts within . . . the Eleventh Circuit seem to come out differently on the present issue shows that the issue is by no means 'beyond debate.'"  Mehta v. Foskey, 877 F. Supp. 2d 1367, 1378 (S.D. Ga. 2012); compare Lewis v. Blue, No. 2:09-CV-862-WKW, 2010 WL 730210 (M.D. Ala. Mar. 3, 2010) ("[C]ase law seems to indicate that failure to intervene claims are cognizable only when related to excessive force violations."), with Sims, 112 F. Supp. 2d at 1270–75 (holding that officers could be held liable for failing to intervene in preventing an unlawful strip search).

Plaintiff further contends that because "[i]t is well established that Defendants needed reasonable suspicion to strip search [her]" and here "there was simply not enough information indicating that [she] was carrying drugs to subject her to [a strip] search," Defendants Lupo and Smith "were given reasonable warnings" that failing to intervene in the search violated Plaintiff's

constitutional rights.  (Doc. 28, pp. 13–14.)  However, "'clearly established law' should not be defined 'at a high level of generality.'"  White v. Pauly, -- U.S. --, 137 S. Ct. 548, 552 (2017) (quoting Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011)).  Instead, "clearly established law must be 'particularized' to the facts of the case.  Otherwise, '[p]laintiffs would be able to convert the rule of qualified immunity . . . into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.'"  Id. (citing Anderson v. Creighton, 483 U.S. 635, 639–40 (1987)).  The Supreme Court explained:

> [W]hat "clearly established" means . . . depends largely "upon the level of generality at which the relevant 'legal rule' is to be identified."  "Clearly established" for purposes of qualified immunity means that "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right.  This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of the pre-existing law the unlawfulness must be apparent."
>
> It could plausibly be asserted that any violation of the Fourth Amendment is "clearly established," since it is clearly established that the protections of the Fourth Amendment apply to the actions of police.  . . .  However, . . . the right allegedly violated must be defined at the appropriate level of specificity before a court can determine if it was clearly established.

Wilson v. Layne, 526 U.S. 603, 614–15 (1999) (citations omitted).

In the case at hand, Plaintiff's characterization of the issue is too general.  Concerning Defendant Lupo, the appropriate question is whether a reasonable corrections officer who suspected—and reported his suspicion—that an individual was concealing contraband could have believed that it was lawful to decline to intervene in the ensuing illegal strip search of the individual where the strip search did not involve the use of excessive force.  Similarly, concerning Defendant Smith, the appropriate question is whether a reasonable deputy warden (or similar official) who was informed of an officer's suspicion that an individual was concealing contraband and who

ordered a search of the individual could have believed it was lawful to decline to intervene in the resulting illegal strip search where the strip search did not involve excessive force.

As discussed above, there is no materially similar binding case that clearly establishes a Fourth Amendment violation in this context, and the Court fails to find a broader, clearly established principle that applies with obvious clarity to these circumstances. Thus, Defendants Lupo and Smith did not violate a clearly established right by failing to intervene in the strip search of Plaintiff. Therefore, Defendants Lupo and Smith are entitled to qualified immunity and shielded from liability for the failure to intervene claim asserted against them within Count II of the Amended Complaint. Accordingly, the Court **GRANTS** Defendants Lupo and Smith's Motion to Dismiss that claim.

**B.     Section 1983: Fourteenth Amendment Search and Seizure Claim**

Also within Count II, Plaintiff alleges that Defendants conducted an unreasonable search and seizure in violation of the Fourth and Fourteenth Amendments. (Doc. 25, pp. 8–10.) In their Motion, Defendants contend that because the "substance of [Plaintiff's] allegations" is that Defendants subjected her to an unreasonable search, only the Fourth Amendment—and not the Fourteenth Amendment—is the "appropriate vehicle" for Plaintiff's unreasonable search claim and her claim pursuant to the Fourteenth Amendment should therefore be dismissed. (Doc. 27-1, pp. 7–8.)

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. Const. amend. IV. The Fourth Amendment applies to the states through the Fourteenth Amendment. Terry v. Ohio, 392 U.S. 1, 8 (1968). In contrast, the Fourteenth Amendment "prohibits any state deprivation of life, liberty, or property without due process of law," Ingraham

17

v. Wright, 430 U.S. 651, 672 (1977), and confers substantive and procedural rights, Albright v. Oliver, 510 U.S. 266, 272 (1994).  However, "[t]he Fourteenth Amendment . . . does not provide an independent source of recovery" in the context of an unreasonable search when no independent basis for recovery under the Fourteenth Amendment is asserted.  Lamb v. Roundtree, No. 1:19-cv-030, 2020 WL 2563043, at *3 (S.D. Ga. May 20, 2020).  "Where a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of "substantive due process," must be the guide for analyzing' such a claim."  Albright, 510 U.S. at 273 (quoting Graham v. Connor, 490 U.S. 386, 395 (1989)); see also Skurstenis v. Jones, 236 F.3d 678, 681 n.3 (11th Cir. 2000) ("In her complaint [the plaintiff] alleged that her Fourth and Fourteenth Amendment rights were violated.  Since she did not contend that any procedural due process rights were violated, the district court correctly analyzed her claims as being under only the Fourth Amendment."), overruled on other grounds by Powell v. Barrett, 541 F.3d 1298 (11th Cir. 2008).

Here, Plaintiff's Amended Complaint asserts that "the strip search of [Plaintiff] was unreasonable under the Fourth and Fourteenth Amendments to the United States Constitution," but it fails to assert an independent claim under the Due Process Clause of the Fourteenth Amendment.[9]  (Doc. 25, pp. 8–11.)  While Plaintiff attempts, in her Response, to add an allegation that her due process rights were violated,[10] a party cannot amend a complaint through briefs in

---

[9]  The only time "due process" is mentioned in the Amended Complaint is in Count I, where Plaintiff alleges that she "enjoyed the constitutionally guaranteed right of due process pursuant to the Fourth Amendment . . . ." (Doc. 25, p. 7.)  This assertion (and Plaintiff's abandonment of it) is addressed in Discussion Section III.C, infra.

[10]  In her Response, Plaintiff asserts that "under the due process clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law."  (Doc. 28, p. 9 (quoting Bell v. Wolfish, 441 U.S. 520, 535 (1979)).)  However, Plaintiff failed to include this type of allegation in the Amended Complaint and unequivocally asserted only an unreasonable search claim under the Fourteenth Amendment.  (See doc. 25, pp. 8–11.)

opposition to a motion to dismiss.  See, e.g., Huls v. Llabona, 437 F. App'x 830, 832 n.5 (11th Cir.

2011) (holding that an argument raised for the first time in response to a defendant's motion to

dismiss was not properly raised before the district court and would not be considered on appeal).

Therefore, the Court declines to consider Plaintiff's new argument.  See Gibbons v. McBride, 124

F. Supp. 3d 1342, 1381 (S.D. Ga. 2015) ("A complaint may not be amended by briefs in opposition

to a motion to dismiss.").

     As noted above, "a strip search performed without reasonable suspicion violates the Fourth

Amendment rights of the individual searched" and not the Fourteenth Amendment.  Cuesta v. Sch.

Bd. of Miami-Dade Cnty., 285 F.3d 962, 969 n.6 (11th Cir. 2002).  Because Plaintiff failed to

allege an independent due process claim and because the Fourth Amendment provides an explicit

source of constitutional protection from the search, the Court finds that the Fourth Amendment is

the appropriate vehicle for Plaintiff's unreasonable search and seizure claim in Count II.

Accordingly, the Court **GRANTS** Defendants' Motion to Dismiss Plaintiff's Fourteenth

Amendment unreasonable search and seizure claim.

### C.     Section 1983: Supervisory Liability Claim

     In Count I of her Amended Complaint, Plaintiff alleges that all Defendants violated her

"constitutionally guaranteed right of due process pursuant to the Fourth Amendment" by searching

and detaining her.  (Doc. 25, p. 7.)  Plaintiff further alleges that this violation was caused by

"Defendants' persistent procedures and practices."  (Id. at pp. 7–8.)

     In their Motion, Defendants construe Plaintiff's due process claim in Count I as a federal

claim for supervisory liability based on Defendants' implementation of procedures and practices.

(Doc. 27-1, pp. 4–7.)  Defendants argue this claim fails as a matter of law because Plaintiff failed

to identify a procedure or practice in the first instance, let alone set forth facts showing how that

procedure or practice caused the alleged violation.  (Id. at p. 6.)  In response, Plaintiff appears to abandon any sort of "due process" theory and appears to instead proceed with the supervisory liability theory based on Defendant Smith's procedures and practices as well as his ordering of the search.  (Doc. 28, pp. 5–8.)  Additionally, Plaintiff states that she does not assert this claim against all Defendants, and, pointing to Count V (her state law claim for negligent supervision), she contends she clearly asserts the supervisory liability claim against only Defendant Smith (and Defendant Williams, who has not yet been served).  (Id. at p. 5.)  In their Reply, Defendants re-emphasize that they are moving to dismiss the federal supervisory claim regarding Defendant Smith's procedures and practices.  (Doc. 31, p. 3.)  Because the parties appear to mutually construe Count I of Plaintiff's Amended Complaint as asserting a Section 1983 claim for supervisory liability, the Court follows suit.

"[I]t is well established in this Circuit that supervisory officials are not liable under [Section] 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."  Keith v. DeKalb Cnty., 749 F.3d 1034, 1047 (11th Cir. 2014) (citation omitted).  Rather, "to hold a supervisor liable[,] a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation."  Id. at 1047–48.  As is relevant here, "[a] plaintiff may establish a causal connection by showing . . . 'the supervisor's improper custom or policy le[d] to deliberate indifference to constitutional rights'" or by showing "facts [that] support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."  Hendrix v. Tucker, 535 F. App'x 803, 805 (11th Cir. 2013) (per curiam) (quoting Douglas v. Yates, 535 F.3d 1316, 1322 (11th Cir. 2008)).  "[T]he standard by which a supervisor is held liable in [an]

individual capacity for the actions of a subordinate is extremely rigorous." Keith, 749 F.3d at 1048; see also Stallworth v. Wilkins, 802 F. App'x 435, 445 (11th Cir. 2020) (per curiam) ("[S]upervisory officials may not be held vicariously liable under § 1983 for the unconstitutional acts of their subordinates.") (citing Cottone v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003), *abrogated in part on other grounds by* Randall v. Scott, 610 F.3d 701 (11th Cir. 2010)).

While Plaintiff alleges that Defendant Smith's "persistent procedures and practices caused the violations of Plaintiff's federal . . . constitutional rights . . . and show[ed] a careless indifference to the violation of her rights," (doc. 25, pp. 7–8), she fails to identify, much less provide details about, the at-issue procedures or practices, (see id.)  In her Response, Plaintiff asserts that the Amended Complaint "lists several specific ways in which the policies were disregarded," but she still fails to describe any policy or procedure to support her claim.  See, e.g., Franklin v. Curry, 738 F.3d 1246, 1251 (11th Cir. 2013) (dismissing the plaintiff's supervisory liability claim based on deliberate indifference because the plaintiff failed to describe "any of the policies that were in place, the sort of policies that should have been in place, or how those policies could have prevented" the unconstitutional conduct).  Thus, Plaintiff's supervisory liability claim based on Defendant Smith's procedures and practices fails.[11]

Accordingly, to the extent the federal supervisory liability claim is based on Defendant Smith's procedures and practices, the Court **GRANTS** Defendants' Motion to Dismiss.  To the extent Plaintiff pleads a federal supervisory liability claim based on Defendant Smith ordering the search, that claim remains pending before the Court.

---

[11] Plaintiff appears to also allege that her federal supervisory claim is based on Defendant Smith ordering the search.  (Doc. 28, p. 7.)  However, Defendants move only to dismiss Plaintiff's federal supervisory claim to the extent the claim is based on Defendant Smith's procedures and practices.  (See doc. 31, p. 3.) As such, the Court declines to review the claim to the extent it relies on Defendant Smith ordering the search.

### IV.    Plaintiff's Failure to Serve Defendant Williams

As discussed in Note 1, <u>supra</u>, Plaintiff has yet to effect service upon Defendant Williams. Pursuant to Federal Rule of Civil Procedure 4(m), a plaintiff must serve a defendant within 90 days after the complaint is filed.  Here, the original Complaint was filed two years ago, yet Plaintiff has failed to serve Defendant Williams with process.

Where a plaintiff fails to comply with the strictures of Rule 4, the Court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time. Fed. R. Civ. P. 4(m).  A plaintiff may obtain an extension of time for service of process upon the showing of good cause. Id.  A plaintiff has the burden of demonstrating the existence of "good cause" justifying service outside of the deadline. Sanders v. Fluor Daniel, Inc., 151 F.R.D. 138, 139 (M.D. Fla. 1993).  "To demonstrate good cause, the plaintiff must offer evidence that . . . (1) [he] has proceeded in good faith; (2) [he] has a reasonable basis for noncompliance[;] and (3) the basis for the delay was more than simple inadvertence or mistake." Durgin v. Mon, 659 F. Supp. 2d 1240, 1258 (S.D. Fla. 2009) (citing Sanders, 151 F.R.D. at 139; Prisco v. Frank, 929 F.2d 603, 604 (11th Cir. 1991); Horenkamp v. Van Winkle & Co., 402 F.3d 1129, 1130–31 (11th Cir. 2005), aff'd, 415 F. App'x 161 (11th Cir. 2011)).  Further, "[t]he serving party bears the burden of proof with regard to its validity or good cause for failure to effect timely service." Profit v. Americold Logistics, LLC, 248 F.R.D. 293, 296 (N.D. Ga. 2008) (citing Sys. Signs Supplies v. U.S. Dep't of Justice, 903 F.2d 1011, 1013 (5th Cir. 1990)).  A court may extend the deadlines contained in Rule 4 "for good cause" shown "if the party failed to act because of excusable neglect."  Fed. R. Civ. P. 6(b)(1)(B).

Although Plaintiff has not requested an extension, the Court will nonetheless afford her the opportunity to demonstrate why the Court should not dismiss her claims against Defendant Williams in accordance with the Federal Rules of Civil Procedure and this Court's Local Rules.

## CONCLUSION

For the reasons set forth above, the Court **GRANTS** Defendants' Partial Motion to Dismiss, (doc. 27). Specifically, the Court **DISMISSES** all state law claims against all Defendants; **DISMISSES** the Section 1983 failure to intervene claim against Defendants Lupo and Smith; **DISMISSES** the Fourteenth Amendment unreasonable search and seizure claim against all Defendants; **DISMISSES** the Section 1983 supervisory liability claim against Defendants Milton, Lupo, and Irizarry; **DISMISSES** the Section 1983 supervisory liability claim against Defendant Smith to the extent the claim relies on procedures and practices; and **DISMISSES** the claim, in Count I, for violation of state constitutional rights against all Defendants. The following claims remain pending before the Court: the Fourth Amendment unreasonable search and seizure claim against all Defendants; the Section 1983 supervisory liability claim against Defendant Smith to the extent the claim relies on Defendant Smith ordering the search; the Section 1983 supervisory liability claim against Defendant Williams; the Section 1983 failure to intervene claim against Defendant Williams; the state law negligent training and supervision claim against Defendant Williams; the state law intentional infliction of emotional distress claim against Defendant Williams;[12] and the punitive damages claim against all Defendants.

Additionally, within **fourteen days** of the date of this Order, Plaintiff shall show cause as to why the Court should not dismiss her claims against Defendant Williams based on her failure

---

[12] Plaintiff's other state law claims (for false imprisonment and battery) were not asserted against Defendant Williams.

to follow the Federal Rules of Civil Procedure and this Court's Local Rules regarding service. Should Plaintiff fail to show cause, the Court will dismiss all claims against Defendant Williams. The discovery stay, (doc. 30), remains in effect while the Court awaits Plaintiff's filing regarding her failure to properly serve Defendant Williams with process.

**SO ORDERED**, this 9th day of December, 2020.

R. STAN BAKER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA